UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FIDELITY INFORMATION SERVICES, INC.,

Plaintiff,

-v- 1:09-CV-766 (LEK/DRH)

KARA S. KATZ, JAY KATZ, and STORM NETWORKS, LLC,

Defendants.

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Fidelity Information Services, Inc. ("Plaintiff") filed the Complaint in this action on July 6, 2009, seeking damages and injunctive relief stemming from Defendant Kara Katz's alleged breach of contract and breach of an implied covenant as well as Defendants Jay Katz and Storm Network, LLC's tortious interference with contractual relations. See generally Complaint (Dkt. No. 1). Presently before the Court is Plaintiff's Motion by order to show cause for a preliminary injunction and expedited discovery. Motion (Dkt. No. 4). For the reasons discussed below, Plaintiff's Motion for a preliminary injunction is denied, and Plaintiff's Motion for expedited discovery is granted.

## I. BACKGROUND

Plaintiff is a provider of technology products and services to the banking industry. Compl. ¶ 12. Plaintiff owns Clear Par, LLC ("Clear Par"), a company that provides a web-based commercial loan settlement system designed to improve the efficiency of settling trades of "par" loans[1] in the

[1] A "par" loan is a loan that is expected to trade at a value of 100 cents on the dollar if sold on the secondary market. Compl. ¶ 4.

primary syndication and secondary loan trading markets. Id. ¶¶ 4, 23.

On December 10, 2004, Plaintiff purchased Clear Par from Bocce CP, LLC ("Bocce") for approximately $33 million. Id. ¶¶ 3, 21, 28. Bocce was owned by three individuals, one of whom is Defendant Kara Katz. Id. ¶ 21. Kara Katz is a partner with the law firm Mandel, Katz and Brosnan, LLP and the wife of Defendant Jay Katz. Declaration of Kara Katz ¶¶ 1, 3 ("K. Katz Decl.") (Dkt. No. 26, Attach. 2). When Bocce sold Clear Par to Plaintiff, the Purchase Agreement included a covenant of confidentiality, non-competition and non-solicitation, by which sellers (including Kara Katz) agreed not to compete with Clear Par and not to disclose confidential information about Clear Par for a period of five years after the sale. Purchase Agreement ¶ 4.9 (Dkt. No. 4, Attach. 1, Ex. 1).

Defendant Storm Networks, LLC ("Storm") is a technology company developed in conjunction with Bank of America, Credit Suisse, and Morgan Stanley. Compl. ¶ 13. Defendant Jay Katz is Storm's Chief Operating Officer. Affidavit of Jay Katz ¶ 10 (Dkt. No. 27). Jay Katz also served as Clear Par's Chief Information Officer until approximately one year after Plaintiff purchased Clear Par. Id. ¶ 6. Plaintiff alleges that Jay Katz founded Storm and incorporated the company in August 2006. Compl. ¶¶ 6, 38. However, Howard Shams ("Shams") asserts that he is the founder of the company and that Storm was "[his] idea and [his] project." Affidavit of Howard Shams ¶¶ 1, 16 (Dkt. No. 31). Shams currently serves as the chairman of Storm's board of directors. Id. ¶ 1.

Plaintiff alleges that in October 2008, Storm launched a product called Storm Loan Marketplace that directly competes with Clear Par by providing an online platform for the trading of par and distressed loans. Compl. ¶¶ 6-7, 39. Plaintiff alleges that Kara Katz has breached the non-compete and confidentiality clauses in the Purchase Agreement and the implied covenant not to

solicit former customers' goodwill after the sale of a business. Plaintiff's claims against Kara Katz stem from, *inter alia*, her alleged role in the drafting of a Master Agreement for Storm that the company will use to standardize terms across all trades performed on Storm Loan Marketplace. See Compl. ¶¶ 7-10, 43-46.

In addition to denying Plaintiff's allegations, Defendants contend that Plaintiff's sole evidentiary foundation for its Motion are the affidavits of Scott Kostyra ("Kostyra"), a Senior Vice President who works for a division of Plaintiff. Defendants contend that Kostyra has never spoken to Kara Katz and that he lacks personal knowledge about the extent of Kara Katz's activities with Clear Par or Storm. Defendants further assert that Storm Loan Marketplace is not yet operational, has no customers, and likely will not be operational until 2010.

Plaintiff argues that "[a] preliminary injunction is necessary here to stop the ongoing violation of the Purchase Agreement and to mitigate any damage from Kara Katz's breach by preventing the dissemination of any improperly obtained work product." Mem. in Supp. at 6 (Dkt. No. 4). Plaintiff seeks an order enjoining Kara Katz from continuing to work with Storm or otherwise engaging in activities competitive to Plaintiff; enjoining Jay Katz and Storm from using and benefitting from Kara Katz's work product generated in violation of her agreement with Plaintiff; and requiring that any work product relating to Storm's Master Agreement be turned over to, and held by, the Court pending the outcome of this litigation. In addition, Plaintiff seeks an order allowing for expedited discovery in this action so that it can determine the full scope of Kara Katz's involvement in Storm's operations.

The Court held oral argument on the pending Motion on July 31, 2009.

## II. STANDARD OF REVIEW FOR A PRELIMINARY INJUNCTION

"'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Sussman v. Crawford, 488 F.3d 136, 139 (2d Cir. 2007) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). In order for a court to grant preliminary injunctive relief, the party seeking such relief must show: "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008) (citation omitted). "Irreparable harm 'means injury for which a monetary award cannot be adequate compensation.'" Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Moreover, to establish irreparable harm, plaintiffs "must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234-35 (2d Cir. 1999)).

## III. DISCUSSION–PRELIMINARY INJUNCTION

### A. Irreparable Harm

Plaintiff's Motion for a preliminary injunction must be denied because Plaintiff has failed to carry its burden of demonstrating that it would suffer irreparable harm absent injunctive relief. Plaintiff argues that Kara Katz, by signing the Purchase Agreement, expressly agreed that the injury Plaintiff is suffering as a result of Kara Katz's active participation in the development of a competitor constitutes irreparable harm. The Purchase Agreement, which was signed by Kara Katz

(among others) as a selling party, included the provision that "[e]ach Seller Party agrees . . . that any violation or breach of [the covenant of confidentiality, non-competition and non-solicitation] will result in irreparable injury to the Buyer for which a remedy at law would be inadequate and that . . . the Buyer shall be entitled to injunctive and other equitable relief as a court may grant after considering the intent of [this section]." Purchase Agreement ¶ 4.9(a).

While courts in this Circuit often enforce such provisions– see, e.g., North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d Cir. 1999)–courts will not enforce such provisions absent a sufficient showing that injunctive relief would be appropriate. See Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice, 830 F.2d 13, 16 (2d Cir. 1987) ("We also agree with the district court that the contractual language declaring money damages inadequate in the event of breach does not control the question whether injunctive relief is appropriate."); Fireman's Ins. Co. of Newark, New Jersey v. Keating, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990) (citing Baker's Aid and noting that "it is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate.").

Plaintiff has failed to show that it is suffering imminent harm or that its injuries could not be remedied by money damages. "It is well-established that a movant's loss of current or future market share may constitute irreparable harm." Grand River Enterprise Six Nations, Ltd. v. Pryor, 481 F.3d 60, 67 (2d Cir. 2007) (citations omitted). However, Storm asserts that its allegedly competing product–Storm Loan Marketplace–will not be operational until 2010, and that it has no customers. Plaintiff does not allege that it has suffered any decline in market share to this point. Thus, its speculation as to future losses lacks the imminence necessary for the drastic relief sought. While Plaintiff contends that Defendants have threatened three of its most important business relationships

(Bank of America, Credit Suisse and Morgan Stanley), Plaintiff has not shown that Defendants' actions have, in fact, caused these relationships to suffer or that Plaintiff faces imminent loss of these customers' business. To the contrary, Plaintiff has not denied Defendants' assertion that these three banks, while investing in Storm, are still Clear Par customers. Plaintiff also has not shown why–under these facts and the expiration of the non-compete clause in December 2009–it could not calculate in monetary terms any loss of market share or other damages that would result from Storm gaining customers at Clear Par's expense, assuming Plaintiff were to prevail on the merits.

Defendants also argue that Plaintiff's eight-month delay in seeking injunctive relief undermines Plaintiff's claim of irreparable harm absent an injunction. On October 20, 2008, Storm issued a press release announcing its intention to launch Storm Loan Marketplace. Dkt. No. 31, Attach. 1, Ex. C. In the press release, Storm "announced the introduction of a new online application service platform for buy and sell-side institutions participating in the corporate loan market." Id. The press release also made clear that the project was "[d]eveloped in conjunction with Bank of America, Credit Suisse and Morgan Stanley," and included quotations from Jay Katz, identified in the press release as Storm's managing director. Id. A November 3, 2008 article in the *Securities Industry News* addressed Storm's proposed launch of Storm Loan Marketplace and included quotations from Kostyra, Plaintiff's affiant in support of its Motion. Dkt. No. 31, Attach. 1, Ex. D. Thus, Plaintiff was aware as early as November 2008 that Storm was planning to launch a product that would potentially compete with Clear Par, and that Jay Katz was a principal in Storm.[2]

---

[2] The record also indicates that Plaintiff approached Storm in June 2009 about the possibility of a collaboration between Storm and Clear Par or the sale of Storm to Plaintiff. On June 23, 2009, Kostyra sent an email to Shams seeking "to follow up on one item you and I discussed a while ago. We had discussed whether it would make sense for CP and STORM to somehow work together in some way that would achieve industry objectives faster than separately." Dkt. 31, Attach. 1, Ex. F.

Based upon the available record, the Court finds that Plaintiff's delay in seeking injunctive relief further militates against a finding of irreparable harm. See Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.") (citations omitted). Plaintiff denies that it unreasonably delayed bringing this action, arguing that it was investigating the matter and only discovered Kara Katz's involvement in June 2009. However, given Plaintiff's knowledge of both Storm's proposed project and Jay Katz's involvement as early as November 2008, the Court agrees with Defendants that Plaintiff could have discovered Kara Katz's involvement in this matter much sooner. At the very least, Plaintiff could have uncovered the marital relationship between Kara and Jay Katz, which Plaintiff argues is grounds to impute culpability.

**B. Merits**

Although Plaintiff's Motion for a preliminary injunction must be dismissed for failure to show irreparable harm, the Court also concludes that Plaintiff has failed to meet its burden of showing a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in Plaintiff's favor.

**1. Claims Against Kara Katz**

Plaintiff alleges that Kara Katz breached the restrictive covenant in the Purchase Agreement

---

On June 25, 2009, Kostyra sent an email to Shams asking "[w]hy would an upcoming transaction have to preclude a strategic discussion w/ Fidelity? Otherwise said, why have you not considered a bid from us?" Dkt. No. 31, Attach. 1, Ex. G. Less than two weeks later–on July 7, 2009–Plaintiff filed its Complaint and the instant Motion. Dkt. Nos. 1, 4.

by: (1) holding "an indirect ownership interest in Storm" due to her marriage to Jay Katz; (2) "directly participating in the development of a business substantially similar to Clear Par by preparing a proprietary Master Agreement of loan terms for use by Storm Loan[;]" and (3) "using her contacts to facilitate Storm's solicitation of" Clear Par customers. Mem. in Supp. at 12. Plaintiff also claims that Kara Katz breached the covenant of confidentiality in the Purchase Agreement by disclosing confidential information about Clear Par to Jay Katz and Storm. Finally, Plaintiff claims that Kara Katz, as a seller of Clear Par, breached the implied covenant against soliciting former customers following the sale of a business.

Plaintiff's principal focus in its oral argument was Kara Katz's alleged breach of the covenant not to compete. The Purchase Agreement provided that "no Seller Party shall, at any time during the five-year period immediately following the Closing Date, directly or indirectly, own, manage, control or participate in the ownership, management or control of, or be related or otherwise affiliated in any manner with, any business substantially similar to that presently engaged in by [Clear Par] . . . ." Purchase Agreement ¶ 4.9(c).

The Purchase Agreement also included a covenant of confidentiality which provided that:

> To the extent that confidential information (as defined below) does not rise to the level of a trade secret under applicable law, for a period of five years after the Closing . . . no Seller Party shall . . . (I) use for any purpose, (ii) disclose to any person, or (iii) keep or make copies of documents, tapes, discs or programs containing, any confidential information concerning [Clear Par]. For purposes hereof, "confidential information" shall mean and include, without limitation . . . all customer lists and customer information . . . provided, however, confidential information shall not include (x) information that is or becomes generally available to the public other than as a result of a prohibited disclosure by a Seller Party . . . .

Id. ¶ 4.9(a).

Kara Katz admits to billing approximately five hours of legal services to Storm since July

2008, out of a total of 53.9 hours of work billed by her law firm to Storm during that time period. K. Katz Decl. ¶ 14. However, she asserts that such "*de minimus* participation as an outside lawyer advising on a proposed user agreement does not invest her with 'ownership, management or control' of Storm, or transform her into someone 'related or affiliated' with Storm." K. Katz Mem. in Opp'n at 14 (Dkt. No. 26). She further asserts that Plaintiff provides no evidentiary basis–other than the conclusory affidavits of Kostyra–to buttress Plaintiff's claim that she was otherwise involved with Storm as to constitute a violation of the non-compete clause. She also denies that her marriage to Jay Katz leads to her having an indirect ownership interest in Storm and denies soliciting Clear Par customers or disclosing confidential information about Clear Par.

As factual support for its Motion, Plaintiff relies upon the Purchase Agreement itself and the Kostyra affidavit and reply affidavit. However, Kara Katz denies ever having met Kostyra, and much of what Kostyra alleges appears to be based more on speculation than personal knowledge. Courts may rely on hearsay evidence on a motion for injunctive relief, especially where the information is within the possession of the defendant. See, e.g., Mullins v. City of New York, __ F. Supp. 2d ___ , 2009 WL 1616005, *5 (S.D.N.Y. June 9. 2009). However, "while affidavits may be considered on a preliminary injunction motion, such a motion should not be resolved on the basis of affidavits that evince disputed issues of fact." Davis v. New York City Housing Authority, 166 F.3d 432, 437-38 (2d Cir. 1999) (citing Forts v. Ward, 566 F.2d 849, 851 (2d Cir. 1977)); see also Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1204 (2d Cir. 1970) (noting the "undesirability of issuing temporary injunctions solely on the basis of affidavits, particularly in cases where everything turns on what happened and that is in sharp dispute.") (internal quotations omitted); Conveyor & Caster Corp. v. Cruzado, 93-CV-0519, 1994 WL 49694, at *2 ("Even if

imminent irreparable harm were established, [plaintiff's] motion would be denied because there are core factual disputes that this Court is being asked to decide on the basis of affidavits alone.").

Given the factual dispute concerning the extent of Kara Katz's involvement in Storm, the Court finds that Plaintiff has failed to provide sufficient support for its claims against Kara Katz to grant injunctive relief. While the Court is concerned that even the *de minimus* involvement with Storm conceded by Kara Katz may contravene the non-compete clause, at this point Plaintiff's evidentiary support for its claims is insufficient to warrant the extraordinary remedy sought. Plaintiff bases its Motion upon the conclusory assertions of an affiant without personal knowledge as to Kara Katz's involvement with Storm. The Court cannot grant preliminary injunctive relief based on mere speculation and allegations.

Plaintiff has similarly failed to produce sufficient factual support for its other claims against Kara Katz. While Plaintiff has speculated that Kara Katz has invested in Storm through her husband, Plaintiff has failed to present facts in support of this contention. Plaintiff has also failed to provide factual support for its claims that Clear Par's customer list is confidential, that Kara Katz disclosed any confidential information about Clear Par to her husband or Storm, or that Kara Katz solicited former Clear Par customers on behalf of Storm. At numerous times during oral argument, Plaintiff's counsel asserted the belief that discovery would show support for Plaintiff's claims. That may very well be true, and the Court's determination of the present Motion does not in any way foreclose the possibility that Plaintiff will unearth facts during discovery showing its entitlement to equitable or other relief. However, the Court cannot grant the drastic remedy sought by Plaintiff on the basis of speculation as to what facts *might* be adduced through discovery.

**2. Claims Against Jay Katz and Storm**

A plaintiff asserting a claim for tortious interference with contractual relations must demonstrate "(1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third-party's breach of contract without justification; (4) actual breach of the contract; and (5) damages to plaintiff." American Bldg. Maintenance Co. of New York v. Acme Property Servs., 515 F. Supp. 2d 298, 314 (N.D.N.Y. 2007) (Kahn, J.) (citing Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996)).

Plaintiff alleges that Jay Katz and Storm have knowingly induced Kara Katz's breach of the Purchase Agreement by soliciting her assistance in developing the Master Agreement and launching Storm Loan Marketplace. Plaintiff further alleges that Jay Katz and Storm have interfered with Plaintiff's contractual relations with its existing customers by attempting to lure them away from Clear Par.

Plaintiff has failed to meet is burden in reference to its claims against Jay Katz and Storm, for reasons similar to those discussed above with reference to Plaintiff's claims against Kara Katz. Plaintiff's claims against Jay Katz and Storm are largely supported by conclusory allegations rather than facts. Plaintiff has failed to provide facts showing that Jay Katz and Storm induced Kara Katz to breach the Purchase Agreement or that Jay Katz and Storm interfered with Plaintiff's contractual relations with its existing customers. Plaintiff has also failed to provide factual support for its argument that any such contracts were in fact breached.[3]

---

[3] As the Court finds that Plaintiff has failed to provide a sufficient factual basis for its tortious interference claim, the Court need not address Storm's argument that Plaintiff lacks standing to assert claims that Storm interfered with contracts between Clear Par and Clear Par's customers.

### 3. Balance of Equities

Even assuming that Plaintiff had shown sufficiently serious questions as to the merits of any of its claims, Plaintiff has failed to show that the balance of equities would tip decidedly in its favor. Plaintiff argues that the injunction it seeks would target only Kara Katz and present only a minimal burden to Defendants, while preventing Plaintiff from losing its competitive advantage, customer base, goodwill, and future business. However, Defendants assert that an injunction would "perpetuate the cloud of uncertainty for other potential buyers, depress the value of Storm and inhibit its ability to launch its product in the marketplace[,]" J. Katz Mem. in Opp'n at 14 (Dkt. No. 28) , and "threaten Storm's ability to ultimately bring its product to market[.]" Storm Mem. in Opp'n at 27 (Dkt. No. 30). The Court agrees with Defendants that an injunction, even if nominally aimed at Kara Katz, would stigmatize all Defendants and present significant obstacles for the development of Storm's business. While discovery might indeed show that Plaintiff's claims have merit, the Court finds that at this time the equities do not favor injunctive relief.

## IV. EXPEDITED DISCOVERY

Plaintiff also requests expedited discovery "to develop a clearer picture of the full scope of Kara Katz's assistance to Storm." Mem. in Supp. at 19. Plaintiff asserts that "expedited discovery will show that Kara Katz . . . has been a key participant with Storm, using her extensive contacts in the banking industry and her standing and expertise to convince specific bank employees . . . to utilize the Master Agreement and facilitating Storm's success." Reply at 4 (Dkt. No. 43).

When deciding whether to grant expedited discovery, some courts apply a four-part test that resembles the preliminary injunction standard, requiring "'(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the

avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.'" Stern v. Crosby, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (quoting Notaro v. Koch, 95 F.R.D. 403, 404-05 (S.D.N.Y. 1982)). "More recently, courts have applied a more flexible standard of 'reasonableness' and 'good cause.'" Stern, 246 F.R.D. at 457 (citing Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 326 (S.D.N.Y. 2005)); see Arista Records LLC v. Does 1-4, 589 F. Supp. 2d 151, 152-53 (D. Conn. 2008).

None of the Defendants' submissions addressed Plaintiff's request for expedited discovery. At oral argument, all Defendants consented to expedited discovery, although Storm consented only as long as the Court also ordered expedited discovery as to Storm's counterclaim.[4] Based upon Storm's proposed launch of Storm Loan Marketplace in early 2010, the expiration of the non-compete and non-confidentiality clauses in the Purchase Agreement in December 2009, and Defendants' failure to oppose Plaintiff's request, the Court finds good cause to permit expedited discovery in this case. Accordingly, the Court orders Defendants (and Plaintiff, in reference to Storm's counterclaim) to produce relevant documents within thirty (30) days of service of document requests and to submit to depositions within thirty (30) days thereafter.

## V. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED,** that Plaintiff's Motion for a preliminary injunction (Dkt. No. 4) is **DENIED**; and it is further

---

[4] On July 24, 2009, Storm filed its Answer, asserting counterclaims for tortious interference with prospective business relations and/or economic advantage, unfair competition, and abuse of process. Dkt. No. 32.

**ORDERED,** that Plaintiff's Motion for expedited discovery (Dkt. No. 4) is **GRANTED** as outlined above; and it is further

**ORDERED,** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED: August 04, 2009
Albany, New York

Lawrence E. Kahn
U.S. District Judge